UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMINA ODAH and MCB
VENTURES, LLC,

        Plaintiffs,

v.

REVERE STEEL, LLC,

        Defendant.

_____/

Hon. Sally J. Berens

Case No. 1:24-cv-1071

**OPINION**

Plaintiffs Ramina Odah and MCB Ventures, LLC initiated this action against Defendant Revere Steele, LLC in the Berrien County Circuit Court alleging claims for breach of contract, tortious interference with contract or an advantageous business relationship or expectancy, unjust enrichment/restitution, and conversion arising out of Revere's agreement with Odah to supply the materials for and erect a pre-engineered metal building on property in Niles, Michigan. (ECF No. 1-1.) Revere removed the action to this Court on October 11, 2024, alleging diversity of citizenship as the basis for removal jurisdiction. (ECF No. 1.)

Presently before the Court is Revere's Motion for Summary Judgment. (ECF No. 31.) The motion is fully briefed and ready for decision. For the following reasons, the Court will **GRANT** the motion and **dismiss** Plaintiffs' complaint with prejudice.

**I.  Background**

Odah is the managing member of MCB Ventures, LLC, a Michigan limited liability company that owns real property at 1919 Industrial Dr., Niles, Michigan (the Property). (ECF No. 1-1 at PageID.9.) Plaintiffs sought to have a steel structure built on the Property to use in operating

a cannabis facility for commercial use (the Project). (ECF No. 32-1 at PageID.197.) Plaintiffs engaged Michael Beydoun, a licensed architect, to prepare designs for the structure. After preparing the design, Beydoun submitted it to Revere, a pre-engineered metal building supplier/erector company with which Beydoun had previously dealt, for a quote for the fabrication and erection of the steel structure. (ECF No. 1-1 at PageID.10–11.)

On or about December 17, 2021, Revere submitted a quote to Odah for a 15,000 square foot, rigid frame, 11-beam prefabricated steel structure to be installed on the Property. Pursuant to the quote, Revere would prepare stamped structural drawings, fabricate and deliver the materials for the structure, cover the cost of freight to the jobsite, and construct the structure for a total project price of $378,750.00. (ECF No. 1-1 at PageID.24–28; ECF No. 32-1 at PageID.236–242.) Revere would complete the structure in a single mobilization consisting of shipping and unloading the materials and erecting the structure in one continuous sequence. The quote structured the price in three separate payments: (1) a $65,000.00 payment due at signing for work to begin on the engineered drawings, allocation of material, and production; (2) a $248,750.00 payment due upon delivery of the project materials prior to unloading; and (3) a $65,000.00 payment to be made during the construction process. (ECF No. 32-1 at PageID.241.)

Odah executed the price quote on December 17, 2021, identifying herself as the sole buyer of the structure. MCB was not disclosed or presented as an interested party to the contract. Odah also gave Revere a check for $65,000.00 for the initial payment drawn on her personal checking account. (*Id.*)

On January 18, 2022, Revere notified Odah that the building materials were scheduled for delivery on March 30, 2022. (*Id.* at PageID.272.) On February 27, 2022, Odah and Beydoun advised Revere that the Project would have to be delayed for two months due to inclement weather

expected at the jobsite. (*Id.* at PageID.273.) One day later, Odah contacted Revere and advised that she could not afford to make the $248,750.00 payment for the delivery of the fabricated materials. (*Id.* at PageID.205, 273.) This created a significant issue for Revere because payment in full for the materials was required prior to unloading, and Revere, which did not manufacture the components, would have to pay its vendor for the custom fabricated material even if Odah failed to make her payment. (ECF No. 32-2 at PageID.354–55.)

Fortunately, Revere was able to halt its vendor's fabrication of the remaining components and thus reduce the material payment to an amount that Odah could afford. Odah would pay for the materials that had already been produced and then pay for the remainder of the yet-to-be-produced materials when she obtained the necessary funds. (*Id.*) On March 1, 2022, Odah sent Revere an email confirming that Revere would deliver the existing materials to the jobsite on March 31, 2022, and would deliver the remaining materials "TBD after that (should be about a month later)," at which time all of the materials would be assembled into the structure. (ECF No. 32-1 at PageID.273.) On March 2, 2022, Revere issued a new invoice to Odah in the amount of $170,250.00 covering the fabricated materials to be shipped to the jobsite in the first delivery. (*Id.* at PageID.277.) On March 18, 2022, Odah made three payments to Revere totaling $170,250. (*Id.* at PageID.296.) In accordance with the agreement, Revere delivered the existing materials to the jobsite on or about March 30, 2022. (*Id.* at PageID.205, 280.) Thus, as of March 30, 2022, Odah had paid Revere $235,250.00, for which she had received $235,250.00 of services and materials, leaving a balance of $143,500.00 for the remaining materials and construction labor.

Because Revere's performance was dependent on Odah securing financing, Revere did nothing while it waited to hear from Odah. On May 11, 2022, Odah notified Revere that she intended to break ground on the Project's underground infrastructure later that month. (*Id.* at

3

PageID.297.) Revere did not hear from Odah again until August 27, 2022, when she sent an email stating:

> It pains me to say this, but we are unable to move forward with our build as we have been victims of an online lending scam and after 5 months of fighting with the company, we have depleted the little bit left in our savings and can no longer afford to build our facility, unfortunately.
>
> I'm reaching out in hopes that you guys may be able to answer some questions for us so that I can try to sell the steel building to someone else. I just had a baby girl last week and my only concern right now is feeding her.
>
> We have a neighbor that is interested in purchasing the steel but wants to know if the plans for the siding can be adjusted to accommodate one (or more) loading dock(s). I told him I would check with you guys and circle back with him.

(*Id.* at PageID.298.)

On or about April 30, 2024, MCB entered into a Purchase Agreement with third-party Phillip Riddle for the potential sale of the Property and the materials Odah had purchased from Revere. (ECF No. 32-3 at PageID.415–21.) Revere was unaware of this purchase agreement at the time it was signed. (ECF No. 32-1 at PageID.226.) Pursuant to Section 11 of the Purchase Agreement, the transaction was contingent upon the parties executing a Bill of Sale attached as Exhibit A to the Purchase Agreement for purchase of the building materials. (*Id.* at PageID.306.) The proposed Bill of Sale tasked Riddle with performing his own due diligence within 30 days and erroneously referred to Revere as the manufacturer of the steel. (ECF No. 32-3 at PageID.464.)

Riddle's initial understanding of the status of the structure was that the additional materials, including the roofing and the siding, would still have to be purchased from Revere but that the cost for the labor to erect the structure had already been paid. (*Id.* at PageID.398-99.) When Riddle contacted Revere, however, he learned that Revere had not yet been paid for labor and erection services. (*Id.* at PageID.401.) On June 28, 2024, Riddle sent Odah an email notifying her that he had decided not to purchase the Property:

> After great consideration I wanted to inform you that I am no longer pursuing to purchase the property for sale In Michigan. When we were negotiating the deal, it was understood that the steel building kit be erected by the company it was purchased from, and all I needed to do was buy the siding and roofing. That wasn't the case according to Matt from Revere Steel. I was Informed that in fact, I would have to pay for the erection of the building. Because of this, I am now out of the budget that I was working with the (sic) complete this project. Hopefully if things change in the future we can work together again on this deal.

(*Id.* at PageID.422; *see also* PageID.402.)

On May 29, 2024, before Riddle withdrew from the deal, and in spite of her representation in August 2022 that she had no funds to finish the Project and would not be going forward with it, Odah sent Matthew Bailey at Revere an email regarding its failure to "fulfill the contract in its entirety[.]" (ECF No. 32-1 at PageID.316.) She further stated that her intention "was always to fulfill the contract and move forward with the build." Odah also warned that she would file suit to recover damages for delay as well as for tortious interference with business expectancy. (*Id.*)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Discussion

As noted, Revere seeks summary judgment on all of Plaintiffs' claims. As an initial matter, Plaintiffs contend that the Court should deny or defer ruling on the motion pursuant to Federal Rule of Civil Procedure 56(d). Plaintiffs note that they filed a motion to compel because Revere refused to produce discovery concerning its defenses, including discovery regarding "communications about repudiation/cancellation, communications with the fabricator, and communications concerning the Riddle transaction and any re-pricing." (ECF No. 38 at PageID.562.) Plaintiffs further contend that the Court should employ its authority under Rule 56(d) because they have "acted diligently in pursuing discovery" (*id.* at PageID.563), and promise to "submit an affidavit pursuant to Rule 56(d) identifying the specific categories of discovery withheld and why those materials are essential to opposing summary judgment." (*Id.*)

Turning first to Plaintiffs' motion to compel, colloquially speaking, that ship has sailed. Plaintiffs filed their motion to compel on February 12, 2026, regarding discovery requests they served on Revere on October 31, 2025, and which Revere answered on January 23, 2026. (ECF No. 35.) On February 13, 2026, the Court entered an Order notifying Plaintiffs that their motion would be held in abeyance pending their compliance with Local Civil Rule 7.1(d) by filing a certificate of attempt to obtain concurrence. The Order further advised Plaintiffs that the motion would be dismissed if they failed to file the required certificate within five days of the Order. (ECF No. 37.) On February 23, 2026, more than five days after Plaintiffs failed to file a certificate, the Court dismissed their motion to compel. (ECF No. 39.) Plaintiffs took no further action.

Turning to Rule 56(d), the rule provides that, when addressing a motion for summary judgment, a court may take certain actions, including deferring consideration of or denying the motion, allowing time to obtain affidavits or declarations or to take discovery, and entering other

appropriate orders. Fed. R. Civ. P. 56(d)(1)–3). But a court need consider these options only if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Id.* Given Plaintiffs' failure to comply with this requirement, the Court need not consider their Rule 56(d) argument. *See Ludwick v. Clinton Cnty.*, No. 1:25-cv-320, 2025 WL 3643697, at *2 (W.D. Mich. Nov. 26, 2025), *adopted by* 2025 WL 3642272 (W.D. Mich. Dec. 16, 2025) ("The Sixth Circuit has 'observed that filing an affidavit that complies with Rule 56(d) is essential, and that in the absence of such a motion or affidavit, this court will not normally address whether there was adequate time for discovery.'" (quoting *Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017))); *Doe v. Grandville Pub. Sch. Dist.*, No. 1:18-CV-309, 2019 WL 3050671, at *5 (W.D. Mich. July 12, 2019) ("Plaintiffs fail to comply with Rule 56(d) by filing an affidavit of counsel. Such failure is fatal to their request." (citing *Gingiloski v. Commercial Recovery Servs.*, No. 2:16-cv-13273, 2017 WL 2334946, at *4 (E.D. Mich. May 30, 2017) ("If a Rule 56(d) request can be denied when supporting affidavits are too vague, it is certainly appropriate to deny Plaintiff's request, because she failed to attach an affidavit or declaration altogether.")))

### A.    Breach of Contract

In Count I of their complaint, Plaintiffs allege that, although they demanded that Revere accept payment for the remaining materials and construction of the building or issue them a full refund, Revere breached the purchase contract by failing to deliver the additional materials to the Property and complete construction of the building or refund Plaintiffs the funds they paid to Revere. (ECF No. 1-1 at PageID.16.)

### 1.    MCB's Status

As a preliminary matter, Revere contends that MCB is not a proper party to assert a breach of contract claim because it was not a party to the contract. Revere further contends that MCB is not a third-party beneficiary under Michigan's third-party beneficiary statute, Mich. Comp. Laws. § 600.1405, as it is only an incidental beneficiary to the contract. (ECF 32 at PageID.178–80.)

It is undisputed that MCB was neither a party to the purchase contract nor mentioned in it. Under Michigan law, "[a] nonparty to a contract may sue for breach of the contract only if it is an intended third-party beneficiary of the contract." *Bayagich v. Township of Rose*, No. 298466, 2011 WL 5374899, at *2 (Mich. Ct. App. Nov. 8, 2011). Pursuant to Michigan's third-party beneficiary statute:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> > (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

Mich. Comp. Laws § 600.1405.

It is well-established that intended beneficiaries may enforce a contract, while incidental beneficiaries may not. *Brunsell v. Zeeland*, 467 Mich. 293, 296 (2002). "By using the modifier 'directly,' the Legislature intended 'to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Schmalfeldt v. North Pointe Ins. Co.*, 469 Mich. 422, 428 (2003) (quoting *Koenig v. City of South Haven*, 460 Mich. 667, 677 (1999)). The test for determining a third party beneficiary is objective; the parties' subjective intent is irrelevant. *Oja v. Kin*, 229 Mich. App 184, 193 (1998). Here, nothing in contract indicates that

8

Revere made a promise directly to or for MCB. While Plaintiffs mention the third-party beneficiary statute in their response (ECF No. 38 at PageID.567–68), they present no argument as to why MCB qualifies as an intended beneficiary. Thus, they have waived this issue. *See Pryor v. Holder*, 436 F. App'x 471, 479 (6th Cir. 2011) (holding that the plaintiff's failure to develop his arguments with any specificity as to why he did not forfeit his claims by filing in state court and why the state defendants were not entitled to qualified immunity amounted to a waiver of his claims against the state defendants); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Thus, MCB is not a proper plaintiff for the breach of contract claim.

### 2.    Merits

"[T]he elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Revere contends that Odah's breach of contract claim fails because it is undisputed that it satisfied all of its contractual obligations by: (1) performing the initial work in exchange for the first payment of $65,000.00; and (2) providing Odah all of the construction materials that had been produced at the time Odah notified Revere of her inability to pay for all of the materials at the time of delivery, in exchange for a payment of $170,250 from Odah. Revere argues that Odah's failure to order and pay for the remaining materials and labor to construct the building constituted a substantial breach that relieved Revere of further performance. Revere contends that Michigan's "first material breach" rule precludes Odah from claiming Revere breached the contract. It further

contends that Odah's August 27, 2022 email amounts to an unequivocal repudiation of the contract that relieved Revere from any further performance. Relatedly, it notes that, given Odah's clear statement of her intent not to perform, Section 10 of the contract Terms and Conditions allowed it to cease further performance under the contract. (ECF No. 32 at PageID.182–83.)

Odah responds that summary judgment is improper because questions of fact remain about the parties' course of performance. She further contends that Revere's "first breach" argument fails because Revere waived any breach by reducing the payment and delivering a partial/first round of the building materials. Finally, she contends that Revere's repudiation argument fails because Revere fails to show that it followed the statutory procedure for seeking adequate assurance of Odah's performance, and Revere fails to present any document showing that Revere treated the contract as unequivocally terminated. (ECF No. 38 at PageID.564–67.)

Contrary to Odah's assertions, no genuine dispute of material fact remains to preclude summary judgment on her breach of contract claim. The evidence, which is undisputed, shows that at the end of February 2022, Odah notified Revere that she could not afford to make the $248,750.00 payment for the delivery of the fabricated materials. (ECF No. 32-1 at PageID.205.) Such failure was not simply a breach, but a substantial material breach, as it precluded Revere from completing its performance under the contract. "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v. Amway Corp.*, 206 Mich. App. 644, 650 (1994) (internal quotation marks omitted); *see also Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, No. 13-14909, 2015 WL 4966883, at *12 (E.D. Mich. Aug. 20, 2015) (noting that "[a] breach by one party to a contract excuses the performance of the other party, who may then recover damages sustained by the breach") (quoting *Baker v. Abramson*, No. 262272, 2005 WL 3304563, at *2

10

(Mich. Ct. App. 2005)). The rule applies only when the initial breach is substantial, *Michaels*, 206 Mich. App. at 650, which it was in this case.

As Odah correctly points out, however, Revere waived the breach by agreeing to modify the contract to allow Odah to pay for only the materials that had been completed and to obtain the remaining materials and labor for constructing the building later when she had the funds—"about a month later"—according to Odah. (*Id.* at PageID.273.) *See Stanwood Motor Sports Acquisition, LLC v. Arnold*, Nos. 313994, 314018, 2014 WL 1515373, at *5 (Mich. Ct. App. Apr. 17, 2014) ("A party may waive the other's breach, i.e., overlook it and continue performing under the contract."); *West Branch Tank & Trailer, Inc. v. Searfoss*, No. 194399, 1998 WL 2016554, at *1 (Mich. Ct. App. Mar. 10, 1998) (noting that following a breach, "any act by the injured party that indicates an intent to continue will operate as a conclusive election to waive the breach"). Nonetheless, after Revere waived Odah's first breach and continued its performance by providing her the existing building materials, Odah breached the contract once again by stating in no uncertain terms on August 27, 2022, that she had depleted all of her funds and was "unable to move forward with [her] build." (*Id.* at PageID.298.) Based on the foregoing rule, Odah's subsequent breach of the contract precludes her from suing Revere for breach of contract.

Apart from the "first material breach" rule, the repudiation doctrine precludes Odah's breach of contract action. The doctrine of repudiation or anticipatory breach provides that where, prior to the time for performance, a party to a contract unequivocally declares her intention not to perform, the other party has the option of either suing immediately for the breach or waiting until the time of performance. *Stoddard v. Manufacturers Nat'l Bank of Grand Rapids*, 234 Mich. App. 140, 163 640 (1999). A repudiation of a substantial term also excuses the other party's performance. *The Eliza Lines*, 199 U.S. 119, 129 (1905) ("By the general principles of contract,

11

an open cessation of performance, with the intent to do no more, even if justified, excuses the other party from further performance on his side."). "In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held." *Paul v. Bogle*, 193 Mich. App. 479, 493 (1992). "'[A] party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform.'" *Id.* at 494 (quoting Restatement (Second) of Contracts § 250 (1981)). Odah's words in her August 27, 2022 email—"unable to move forward" and "can no longer afford to build our facility"—meet this standard. (*Id.*) Moreover, based on Odah's representation, Revere was entitled under the Terms and Conditions of the parties' agreement to cease its performance:

> 10.    Reasonable doubt on the part of REVERE of Purchaser's financial responsibility shall entitle REVERE to stop operations, decline shipment, withhold delivery of any material in transit, stop services from being performed, or to exercise any other rights or remedies granted to REVERE under applicable law without any liability whatsoever unto REVERE, until Purchaser shall have paid for all material and services referred to in this Purchase Order, or otherwise satisfied REVERE of its financial responsibility. . . .

(*Id.* at PageID.239.)

In addition to the foregoing grounds, although Revere does not specifically raise the issue, the summary judgment record indisputably shows that the parties considered their contract abandoned. "The abandonment of a contract is a matter of intention to be ascertained from the facts and circumstances surrounding the transaction from which the abandonment is claimed to have resulted." *Dault v Schulte*, 31 Mich. App. 698, 700-01 (1971) (quoting 17 Am. Jur. 2d Contracts § 484). "Without any explicit agreement for the abrogation of a contract, it may be effectually rescinded by the actions of the parties where they mutually abandon all further performance under it, and treat it as at an end, neither seeking to hold the other to any accountability under it." *Young v Rice*, 234 Mich. 697, 700 (1926). That is precisely what occurred here. For her part, Odah advised Revere that she could no longer afford the project and would not

12

build the structure. In fact, she acknowledged the contract was at an end through her efforts to sell the materials she had purchased from Revere to a neighbor. (*Id.* at PageID.298.) For its part, Revere did not sue Odah for the profits it lost based on Odah's lack of performance. Thus, the parties' respective conduct demonstrates abandonment.

Odah's citation of Michigan's version of Sections 2-609 and 2-610 of the Uniform Commercial Code, Mich. Comp. Laws §§ 440.2609 and 440.2610, for the proposition that Revere was required to demand "assurances" of performance from Odah following her repudiation lacks merit, as the statutes she cites merely provide the aggrieved party discretionary rights with respect to the other party's non-performance. Revere was entitled to treat the contract no longer effective and to take no further action to perform it. Thus, Odah's argument, which cites no case for support, lacks merit.[1]

### B.      Tortious Interference

In Count II, Plaintiffs allege a claim for tortious interference with a contract or advantageous business relationship or expectancy. As an initial matter, Plaintiffs cannot establish a claim for tortious interference with a contract because they cannot establish the first element, the existence of a contract. *See Knight Enters., Inc. v. RPF Oil Co.*, 299 Mich. App. 275, 280 (2013) (quoting *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 89–90 (2005)). The transaction upon which Plaintiffs rely for their tortious interference claim is the prospective purchase by Riddle, but there was no binding contract as between MCB and Riddle

---

[1] As Revere notes, even if Odah were permitted to retract her repudiation or revive the abandoned contract, she would still be required to "clearly indicate to [Revere] that [she] intends to perform[.]" Mich. Comp. Laws § 440.2611(2). However, she provides no evidence showing that she attempted to retract her repudiation, such as proof to Revere of her financial ability to complete the contract. In fact, the proposed sale to Riddle shows the opposite—that Odah needed to sell the building materials because she lacked the financial resources to perform her payment obligations to Revere.

because Riddle elected not to proceed with the purchase after learning that Odah had not paid Revere for the construction labor costs. (ECF No. 32-3 at PageID.422.)

Plaintiffs' claim thus boils down to one for tortious interference with a business or contractual expectancy, the elements of which are: (1) the existence of either a valid business relationship or the expectancy of such relationship; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference by the defendant that causes the breach or termination of the relationship or expectancy; and (4) resultant damages to the plaintiff. *Health Call of Detroit*, 268 Mich. App. at 90; *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78 (2003). The "intentional interference" must actually be improper, meaning it was either (1) the intentional doing of a *per se* wrongful act or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's business relationship. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*, 257 Mich. App. 365, 383 (2003); *Feldman v. Green*, 138 Mich. App. 360, 369 (1984). To show that an act is wrongful *per se*, it must be shown that it is "inherently wrongful or one that is never justified under any circumstances." *Formall, Inc. v. Community. Nat'l Bank of Pontiac*, 166 Mich. App. 772, 780 (1988). To show that a lawful act was done "with malice and unjustified in law," the plaintiff must show specific, affirmative acts that corroborate the defendant's improper motive to interfere with the plaintiff's business relationship. *Feldman*, 138 Mich. App. at 369–70. An act does not constitute improper motive or interference "[w]here the defendant's actions were motivated by legitimate business reasons." *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 217 Mich. App. 687, 699 (1996) (per curiam).

The claim fails on the third element. To review, MCB entered into the Purchase Agreement with Riddle to sell not only the Property, but also the building materials that Odah had purchased

14

from Revere, which were clearly of no use to Plaintiffs. In fact, Riddle's purchase of the building materials was an integral part of the Purchase Agreement. (ECF No. 32-3 at PageID.417.) While Plaintiffs referenced Revere in the proposed Bill of Sale and gave Riddle Revere's contact information so that he could perform his due diligence, they did notify Revere of the proposed transaction or advise that Riddle would be calling to inquire about the building. Revere first learned of the transaction when Riddle contacted Revere. In both his email to Odah and his deposition testimony, Riddle confirmed his initial belief that he would only have to pay for the roofing and siding for the building but said that later after speaking with Bailey, he learned that he also would have to pay for the labor. (ECF No. 32-3 at PageID.398–99, 422.) This information from Bailey was accurate because, while the contract had covered labor for the construction, Odah had not ordered and paid for the remaining components and thus had not paid the final $65,000.00 payment for labor. Bailey's statement to Riddle regarding the labor was not improper interference because Revere had a legitimate business interest in conveying accurate information to Riddle.

Plaintiffs allege that Bailey also told Riddle that the contract did not call for construction of a building on the Property and was not assignable, that there were issues getting utilities to the Property, and that Odah had financial difficulty making payments to Revere (which was true). (ECF No. 1-1 at PageID.17.) Riddle's testimony shows that he was always aware that Odah had contracted with Revere to build the building on the Property, and a statement that Revere was not willing to accept an assignment of a contract that Odah had repudiated and the parties considered abandoned was in furtherance of Revere's business interest.

In any event, Plaintiffs fail to show that Bailey and/or Revere committed a *per se* wrongful act and are thus required to present evidence showing that Revere acted with an improper motive to interfere with Plaintiffs' expectancy with Riddle. *Feldman*, 138 Mich. App. at 369–70. To do

15

this, Plaintiffs point to Riddle's opinion that Baily's discussion of Odah's finances was "unnecessary," (ECF No. 38 at PageID.570 (citing ECF No. 32-3 at PageID.410–11)), but Riddle's testimony does not establish malice or an improper motive on the part of Revere. One could reasonably expect that the topic of Odah's financial difficulties in making contract payments would arise in the context of an inquiry about the status of her contract with Revere. Plaintiffs also suggest an improper motive because Bailey testified that he had taken steps to prepare an updated proposal for Riddle. (ECF No. 32-3 at PageID.358.) They assert that this shows that Bailey's communications with Riddle "were not neutral but were motivated by [Revere's] interest in redirecting the project for its own benefit." (ECF No. 38 at PageID.573.) This argument makes no sense. As set forth above, Odah had repudiated the parties' contract and neither she nor Riddle had any legal right to force Revere to honor its terms. Revere was justified in re-quoting financial terms that were more than 18 months old. More importantly, Plaintiffs *needed* Revere to sell the remaining materials and provide construction labor in order to make their deal with Riddle work. In other words, Plaintiffs had nothing to lose and much to gain from Revere contracting with Riddle to complete the building. Therefore, this claim fails.

### C.      Unjust Enrichment and/or Restitution

In Count III, Plaintiffs allege that Revere was unjustly enriched because while Odah paid Revere $170,250.00 for some of the building materials, which she received, Revere refuses to provide the remaining building materials or the labor for the construction of the building. Plaintiffs allege that they conferred a benefit upon Revere by paying it for the stamped structural drawings—which they admit they received—that are useless without the final materials and construction of the building on the Property. (ECF No. 1-1 at PageID.19–20.)

> The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the

> retention of the benefit by defendant. In such instances, the law operates to imply a contract in order to prevent unjust enrichment. However, a contract will be implied only if there is no express contract covering the same subject matter.

*Innotext, Inc. v. Petra'Lex USA, Inc.*, 694 F.3d 581, 594 (6th Cir. 2012) (quoting *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993)).

This claim fails for two simple reasons. First, an express contract exists covering Odah's purchase of the building materials and Revere's labor. Second, Plaintiffs fail to show that Revere received a benefit which is inequitable for it to retain. While Odah paid Revere some of what was due under the contract, it is undisputed that she received the services and materials that the payments covered. Revere did not provide Odah the remaining materials and labor because she failed to make the required payments. Revere was not unjustly enriched.

### D.    Conversion

Count IV asserts a claim for conversion. Specifically, Plaintiffs allege that they paid Revere $235,250.00 for the construction of the building, which Revere was to hold specifically for the benefit of Plaintiffs for construction of a building on the Property. Plaintiffs further allege that Revere converted the funds by wrongfully exerting dominion and control over them. (ECF No. 1-1 at PageID.20.)

Under Michigan law, conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 111 (1999); *see also Dunn v. Bennett*, 303 Mich. App. 767, 778 (2013) (stating that "an action may lie in conversion of money provided

17

that there is an obligation to keep intact or deliver the specific money in question, and where such money can be identified") (internal quotation marks omitted).

This claim also lacks merit. First, the claim fails because it is simply a breach of contract claim recharacterized as a conversion claim. It is undisputed that Odah paid the $235,250.00 to Revere for services and materials it provided to Odah. Once Odah paid the funds to Revere, she had no right to their return and Revere had no obligation to return them. Second, Odah fails to show that Revere was obligated to return the specific funds that she paid to Revere. Contrary to Odah's contention, no issue of fact remains on this claim.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Revere's motion for summary judgment (ECF No. 31) and dismiss Plaintiffs' complaint **with prejudice**.

A separate order will enter.


Dated: July 8, 2026                                    /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       U.S. Magistrate Judge